Case number 233998. Charisma Hudson, et al. v. Datanyze, LLC. Argument not to exceed 15 minutes per side. Mr. Herra, you may proceed for the appellants. Good afternoon. Glenn Herra for the appellants. I would like to reserve five minutes of my time for rebuttal, please. Very well. Thank you. The Ohio Right of Publicity Statute, or ORPS as the parties have referred to it, it provides Ohio residents with the right to control how and whether their persona is used for commercial purposes. It is a violation of the ORPS for a company to use any aspect of an individual's persona for a commercial purpose without first obtaining written consent. In this case, the plaintiffs allege, and these allegations are assumed to be true at the pleading stage. This case was dismissed on a Rule 12b6 motion to dismiss. So the facts of the complaint are presumed to be true. The plaintiffs allege that their names and additional identifying information are in the database that the defendant, Datanyze, uses. Let me ask you this. Where did the plaintiffs allege that their names had commercial value? In the complaint. We alleged that, but the rationale behind that allegation is, just as the court held in Wilson under the same statute. Specifically, where in the complaint do you make that allegation that the plaintiffs' names have commercial value? Give me one moment. Do you agree that that's a necessary component? Yes. Excuse me. The reason, I'm sorry I can't find the paragraph where we say that, but the reason why we know and the reason why that allegation stands up is because of how the defendant is using it. They're using it as a teaser, as a come-on to get people to buy a paid subscription. So of course it has commercial value because it's making money for the defendant. I don't think they're using it for a commercial purpose, which is part of the statute as well, but I don't know that that establishes that the plaintiff's name has commercial value. Well, if it didn't have any value to it, then it wouldn't be successful and we wouldn't be here. Data Nice's business model wouldn't be working for it the way it is. It's driving people to pay for subscriptions, which is the crux of the allegation that they're using these people's persona, which includes their name obviously, for a commercial purpose. They're using their e-mails and telephone numbers too, right? Correct. Would it be a valuable database without the names, just selling the e-mail addresses and the phone numbers? It might be valuable, but not as valuable to the sales professionals who are using Data Nice to reach contacts. I mean, that's what it's for, and you would like to have a name, I presume. I mean, the e-mails aren't the person's persona, are they? And the phone number isn't. No, those are not included in the statutory definition of persona. Name is, however, included. And you've got 120 million names? That's what Data Nice says, yes. You're saying each person's name is valuable and is using their persona? It's interesting. I've got a question about jurisdiction of the case. This is brought under the Class Action Fairness Act. The Class Action Fairness Act requires minimal diversity. But I noticed that the defendant is an LLC, and the complaint merely alleges where the LLC is based, but does not allege the citizenship of the members of the LLC. And our case law is quite clear that the citizenship of the LLC depends on the citizenship of its members. It's not like a corporation. Here we know that the plaintiffs are Ohio citizens, but we don't know the citizenship of the LLC. Isn't that a defective pleading requirement here, too? Your Honor, I don't know the citizenship of the members of Data Nice LLC. Don't you have to allege that to get jurisdiction? Your Honor, no one raised this below, at least Data Nice. We have an independent obligation to assure our subject matter jurisdiction over cases. I assure you I will look into it, if the Court will allow me. I could write a letter, a 28-J letter of some sort? I'd like you to do that. Because if you have a member of the LLC who is a citizen of Ohio, we don't have jurisdiction under the Class Fairness Act. And that will be the end of the case. I would appreciate that. Can you do that within 10 days? Absolutely, Your Honor. I want to point out, I want to highlight that this case, unlike all the other cases that the District Court relied on, was at the pleading stage. There's been no discovery. It's not on a motion for summary judgment like the cases that the District Court relied on. And like our strongest case, Wilson v. Ancestry.com, from the Southern District of Ohio, I want to be clear, because it's not in the briefs. It happened after the briefing concluded. That case, the plaintiff, under nearly identical facts, got past the motion to dismiss, got discovery, and then the defendant moved for summary judgment. And actually, recently, it obtained summary judgment. The District Court held that the plaintiff's persona was not actually used in the manner that the complaint alleged. It turned out to be a little bit different. No one had ever actually looked up those plaintiffs, and the defense were able to establish that. But that's a factual matter that the plaintiffs were allowed to explore and seek discovery and use all the tools of discovery that plaintiffs use, take depositions, issue written discovery. We've had none of those luxuries in this case where we just got shot down at the pleading stage, and that's really the first error that the District Court... In your view, would just a standard old phone book violate the Ohio statute and the Ohio common law? No, absolutely not. Why not? Because you're not using the personas, the names in the phone book, to sell something. You don't have to buy a paid subscription to the phone book to look up information. Oh, but what if they were selling the phone book? That still would not count, I don't think, because you wouldn't be using that particular plaintiff's persona as a pitch, as a come on, to sell the book. Why else would they be selling the phone book if not for the names and the contact information in the phone books? Sure, there's no other reason you would buy it. But I don't think that would give rise to a cause of action, unless you were doing what Data Nice is doing, doing a teaser, giving somebody limited access for a certain period of time, and you could look at the plaintiff's profiles, and maybe you could see some of it but not all of it, like in the Ancestry case, or you could get limited access to a certain number, like 10, like Data Nice does in this case. That's where it crosses the line and where you're using the plaintiff's persona for commercial purpose. Selling the phone book in and of itself, I don't think you would be using their persona in the same way. The district court also relied on Vinci and Balsley cases, which were also decided on summary judgment and a developed record. Both of those involved plaintiffs who were public figures. There was a local newscaster in Balsley and an Olympic athlete in Vinci. So those cases are factually distinguishable, even to the extent that they would apply here. They contained historical information. With respect to the First Amendment argument, that's an affirmative defense, so that's the first error the district court made here that shouldn't lead to a dismissal. Is that doctrine, is that an affirmative defense? It is. Why can't we reach affirmative defenses? What authority do you have that says we can't reach that at the motion to dismiss stage? Well, you know, I don't have a case at the top of my head, but an affirmative defense is raised in answer to a complaint, typically. And it also brings in facts from outside of the complaint. The facts in this case are the facts of the complaint. And under the facts of this complaint, the use is not incidental. It's central to advertising the paid subscription plans that Dayton Knives is in the business of solving. I'll reserve the balance of my time. Thank you. Very well. Good afternoon. Good afternoon, Your Honors. May it please the Court, Martin Roth on behalf of Appellee Dayton Knives. The issue on appeal is whether the district court correctly dismissed this case because Ohio's right of publicity laws do not prohibit free trials of online directories. The district court's well-reasoned order followed nearly 50 years of Ohio precedent related to the incidental use doctrine. Judge Griffin, to ease your concern about jurisdiction, I do want to note that in our certificate disclosure statement we filed with the court, it notes that the sole member of Dayton Knives LLC is ZoomInfo Technologies Incorporated, which is a publicly traded corporation based in Washington and I believe incorporated in Delaware. So we do have jurisdiction here. That's why it wasn't challenged. I agree it wasn't pled properly in the complaint. I don't need the letter then. We have jurisdiction. Thank you for clarifying that. You're welcome. Under the Ohio precedent, being included as one of over 120 million names in a database is plainly an incidental use because it does not take advantage of appellant's reputation, prestige, or other value associated with their identities. That's the test that's been in existence for 50 years since the Zucchini case, which codified the restatement second on torts. Judge Mathis, you asked a great question. There is no allegation in this case of any commercial value by the plaintiffs. You can read the complaint. It's not there. The closest they come is in paragraph 36 and paragraph 46, where they talk about how they have an intellectual property or privacy interest in their names, but that's plainly insufficient to establish commercial value under the cases. And the case law is very instructive here. So there are not a ton, but there are several Ohio cases and some cases of this court that explain what commercial value is and explain what an incidental use is. One of the key cases is called Vinci. In that case, Dixie, instead of putting the normal floral pattern on their cups, decided to put the names and accomplishments of Olympic athletes. Now, plainly, those Olympic athletes had names that mattered. They were of celebrity status. But the Ohio court held that even in that case, that was just an incidental use because it only contained factual information that was publicly perceptible. I would submit that's an even more stark case than what we have here, which is just a simple directory or phone book. Appellant's theory in this case would be no different than if a customer would go to a library or a bookstore and pick up a copy of the encyclopedia and find someone's name and determine during that free preview that they wanted to buy the encyclopedia. No one would ever say that someone listed as an entry in an encyclopedia or a phone book or a directory of lawyers in Cleveland or a directory of dentists in Toledo would have their right of publicity violated. Would it change the analysis if the free trial involved less people? Like here we have 120 million. What if it was two plaintiffs here, but the free trial gave you access to two plaintiffs and eight other persons? Would that change the analysis? I don't think so. It's not the number of people that matters. It's the way the use is done. So the clear standard under Ohio law is whether or not the use takes advantage of someone's reputation, prestige, or other value associated with their names. So in your example, Judge Mathis, if it was very specific to two specific people that were celebrities, then maybe, but it wouldn't be the number. It would be the way those names are being used. And we know that because of cases like Vinci, cases like Harvey, which involved a CLE with a case related to termite infestation where it was just on slides in the back, and cases like Balsley. And the Balsley case is actually sort of interesting because there are two different district court opinions under the statute in Balsley, both involving a news anchor from Cleveland who participated in an unfortunate incident at a bar while on vacation, and they're pretty instructive. In one Balsley case, there was an online website that used a topless photograph of the news anchor with a banner that said, click here for more. And the court found that that was more than an incidental use because they were using that photo to get traffic. In the other case, the photograph was contained within the pages of Hustler magazine, and the court in that case said that was an incidental use. That was not actionable because they weren't using her image to gain any commercial value for any commercial purpose. The use of this compilation of all these names and other data, do you have a use that's in the record? The record, we're on a motion to dismiss, so the record is the complaint. And what they say in the complaint is simply that potential customers availing themselves of the free trial are able to view, and on information and belief, have viewed the plaintiff. So they haven't even alleged that anyone even used their names, just the potential that someone could have, which is no different than Your Honor's examples about an encyclopedia or a book in a bookstore. As the district court found, plaintiffs here aren't challenging the database itself. They're not even challenging subscription access to the database. And so it would be paradoxical to say that you can charge money to search for someone's name, but the minute you give them a free credit, that's actionable. I would submit that if that were the law, which it's not, that would mean that any product or book that involved people would create a right of publicity claim. And that's not how Ohio's interpreted the law or how this court's interpreted the law. There are two cases from this court related to the right of publicity, the ETW case, which involved Tiger Woods suing over a portrait made about him, and the LANDM case involving an actor who had played the part of a minor role in The Predator suing over a toy made about him. And in both cases, what this court's jurisprudence says is you have to balance the right of publicity against the First Amendment right of free expression. And Ohio, smartly, has come down on the side of putting weight on the scale of the First Amendment almost as a doctrine of constitutional avoidance. And that's what the district court did here, right? The district court dismissed the case on incidental use, and by doing that, never had to get into the thorny First Amendment question that would be raised by this case. But we would submit either way it would violate the rights of the First Amendment for ZoomInfo or any company if all of a sudden it couldn't prepare a data compilation of people. Let me ask you this. Is there any distinction between the Ohio statute and Ohio common law that's pertinent to the discussion? Yes. So in Harvey, the Ohio Court of Appeals explained, and this court's acknowledged in other cases, that in Ohio, the legislature is presumed to write on the slate of the cases before it. It's not writing on a blank slate unless it says so. So in Ohio, Zucchini and Vinci in some of these cases interpret the Ohio right of publicity in the common law. Then we have cases like Harvey that come after the Ohio right of publicity statute. And what the Ohio courts and the federal courts to interpret that Ohio statute uniformly say is you look at both. Because unless the Ohio legislature expressly says it is abrogating common law, the same law applies. And so Ohio, unlike some other states, has a very strong incidental use doctrine because they've made this choice, this constitutional choice, to respect the First Amendment. A couple of other points, Your Honors. On this affirmative defense point, first of all, there's case law from this court, specifically the estate of Barney PNC bank case, that says even if it is an affirmative defense, that can be properly addressed on a 12B6 where plaintiffs' own allegations show the defense exists. That involved a bank authorization. So even if it were an affirmative defense, the district court was right to reach it. But it's not an affirmative defense, right? The element of the claim here, the claim here under the Ohio revised code 2401-2, is that we have somehow violated these plaintiffs' persona by commercially using their persona. And commercial value is plainly defined to be part of that under 2401.01A and B. So this is not an affirmative defense. It's an essential element of their claim. But even if it were, the district court was right to dismiss on this basis. We also cited, to Your Honors, the Orvis case from the District of Vermont, where it's a federal case that applied Ohio law. It acknowledged the point Your Honor just made, Judge Mathis, about how the common law applies. And it granted a 12B6. So there was precedent for what the district court did here. And we would submit that Judge Knapp did a good job of looking at the Ohio cases and accurately predicting what an Ohio court would do, which, as this court knows, is exactly the job of a district court under federal jurisdiction under ERI, which is what we have here under CAFA. Just taking a few more minutes on this point, not to belabor it, but under Ohio law, which dates back to Zucchini in 1976 and comes from the second restatement on torts, the value of the plaintiff's name is not appropriated by mere mention of it or by reference to it in connection with legitimate mention of his or her public activities. It's only when it is published, nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other values. So, again, all we have here, as Your Honors have elucidated through your questions, is use of a plaintiff's name with factual information, business address, business telephone number. That's plainly an incidental use. This is a far cry from most of the cases under right of publicity, which we all know and love now in the regime of NIL and sports, which involve people like Johnny Carson, Urban Meyer, Tiger Woods, and Michael Jordan. Even in those cases, there can be incidental use, and we don't have that here. No one is purchasing data nines because Charisma Hudson or Brian Schaefer is part of the database, and they haven't even pled that anyone actually looked at those names. The case law that appellants cite in their brief is largely federal district court case law under other states' laws and that are very different here in two important respects. First, a lot of those states don't have incidental use doctrines like Ohio does, and second, in a lot of those cases, there were concrete advertisements, right? There were teasers that said, if you want to find this person's information, click here. That puts them in the category of the first Balsley case. We're not in that category. We have nothing of the sort, and unlike in other cases where there are direct emails to certain companies, we don't have that either. So very briefly on the First Amendment, again, I don't think Your Honors need to reach this issue at all. I think you can affirm just as the district court did on the incidental use doctrine, but if for any reason you were thinking about not doing that, we would submit that this is First Amendment-protected conduct. It's very clear under many cases, Dex Media from the Ninth Circuit, Berdoliak v. Avvo from the Northern District of Illinois and others, that a compilation or a directory or a phone book is entitled to First Amendment protection. Those directories are non-commercial uses, as is Dayton Issa's directory here. What if we think that it is a commercial use? How does that, that it is commercial speech, how does that affect your analysis? So first of all, we would say it's not, but even if it is, they still would need to pass intermediate scrutiny under the Supreme Court case law in Bolger, Board of Trustees of New York, and other cases. And in that case, where speech is commercial but not false or deceptive, there must be a government regulation that's designed to directly advance a substantial government interest, and that's no more broad than it needs to be. And we would submit that's not the Ohio Right of Publicity Act, in this case, as applies to these facts. Unless Your Honors have further questions, I'll cede the remaining amount of my time, and we'll stand on our briefs. Are there questions? Thank you, Mr. Roth. Five minutes rebuttal. Mr. Herr? Thank you, Your Honor. Judge Mathis, I wanted to point out in paragraph 59 of our complaint, we allege that the plaintiffs have been denied the commercial value of their names, voices, et cetera, their personas, and suffered economic damages based on that misuse. And we do use the phrase, but I would, again, suggest that the way we explain Data Nice's business shows that the personas have commercial value. That's why they're being used. It's also important, you know, the defendants say, we can't show right now that anyone actually clicked on the plaintiff's profiles on Data Nice. That's because we've had no discovery. But we do allege it on information and belief. In paragraphs 30 and 40, we specifically say on information and belief that these plaintiffs' names have been, you know, accessed, their profiles at least, by somebody, by a person, a potential customer accessing it on a trial basis. So when the defendant says no one's buying a Data Nice subscription because Ms. Hudson or because Mr. Schaefer is included in it, he doesn't know that, and we don't know that because there is no record that has been generated. On the First Amendment question, I would argue that the central Hudson's House intermediate scrutiny is clearly met by the ORPS. There's a substantial interest, the State of Ohio has a substantial interest in allowing citizens to avoid non-consensual commercial exploitation of their personas. The statute directly advances that interest, and the statute is not more broad than necessary. It contains numerous exceptions for matters that are newsworthy of public interest or public affairs. If there are no further questions, I'll rest on our briefs. All right. Thank you very much, Mr. Hanna. Thank you. The case will be submitted. May call the next case.